UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA-SHREVEPORT DIVISION

| | | |
|---|---|---|
| TRAMAIN POLK | * | CIVIL ACTION NO: 25-126 JE-MLH |
| | * | |
| v. | * | JUDGE JERRY EDWARDS |
| LT. DAVIS; | * | MAGISTRATE JUDGE |
| STATE OF LOUISIANA THROUGH | * | MARK L. HORNSBY |
| LOUISIANA DEPARTMENT OF | * | |
| PUBLIC SAFETY AND CORRECTIONS | * | |
| DAVID WADE CORRECTIONAL CENTER | | STATE OF LOUISIANA |

*************************************************

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE OF COURT TO FILE AMENDED COMPLAINT FOR DAMAGES/MACE LOSS OF EYESIGHT**

MAY IT PLEASE THE COURT:

On April 3, 2025, the State of Louisiana filed *Memorandum in Opposition to Plaintiff's Motion for Leave of Court to File Amended Complaint for Damages/Mace Loss of Eyesight* RD 23. This Court should grant TRAMAINE POLK leave of court to file *Amended Complaint for Damages/Mace Loss of Eyesight*, allow the Plaintiff, TRAMAINE POLK, to amend the complaint herein and body of complaint from the name Lt. Davis to Lt. Robert Davis to reassert claims against that named defendant and to cure any confusion as to whether a federal claim was plead against the state.

The State of Louisiana asserted that it was "bad faith" to seek to amend to provide the full names of Lt. Davis on the basis that the amendment is an attempt to have this action remanded. The State failed to connect the dots on its argument. Deductive reasoning does not support the conclusion reached by the State.

The State of Louisiana argues that Lt. Davis has not been served, when, in fact, the TRAMAINE POLK offered evidence into the record that Rhonda Weldon is the agent for service of process for all employees. It is unlikely there is more than one Lt. Davis at DWCC. Even if there were two Lt. Davis's both would be considered served and the appropriate exception could have been filed. As it is the State itself identified Lt. Davis as Lt. Robert Davis in a letter it and provided on January 27, 2025, writing:

> This letter is to advise that I have just been appointed this afternoon the defense of the State of Louisiana, through Department of Public Safety

> and Corrections, and Robert Davis in connection to the above referenced case. I believe an answer is due today, January 27, 2025. . . . Ex 4

Although properly served through his agent for service [Ex 2 and 3] and although highly unlikely there are or were two (2) Lt. Davis's working at DWCC on August 20, 2023, Lt. Davis has not made an appearance at this time. Lt. Robert Davis is a Department of Corrections employee who was employed on August 20, 2023, and who was employed when his agent for service of process Rhonda Weldon was served with process. While his name was incomplete in the Petition, he was served with process through his designated agent for service. Ex 3 It is unlikely there were two persons with the last name Davis holding the rank of Lieutenant at DWCC at the time of service of the Petition.[1]

Moreover, here, there has already been an investigation into this matter through the ARP process. See Ex 5 and 6.

Courts have repeatedly found that naming a specific guard by name is not generally required to place a warden on notice of the incident such that an investigation may be had.

In an older case, another Court wrote, "Although the defendants contend that the plaintiff's failure to identify the individual defendants by name in the referenced grievances mandates a conclusion that the plaintiff's claims against them are unexhausted, it has never been an absolute requirement that a grievance identify by name all of the persons who are later named as defendants in an inmate's lawsuit." Adams v. Cain, 2014 U.S. Dist. LEXIS 139433, *8-9 (M.D. La. Aug. 11, 2014)(J. Jackson), citing, see Johnson v Johnson, 385 F.3d at 522 (noting that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued"). Recently, this Court wrote, "Overall, an uncounseled inmate 'need not present legal theories in his grievances,' nor 'provide personal notice to a particular official that he may be sued.'" Deal v. Dep't of Corr., 2016 U.S. Dist. LEXIS 143995, *9, 2016 WL 6090938

[1] See Thompson v. Matthews, 374 So.2d 192 (La. App. 4 Cir.1979) (defendant's identity was fixed with certainty, so that the error in spelling his name was of little moment).

(M.D. La. Oct. 18, 2016) (J. Brady), citing, Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004).

> Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Johnson v. Johnson, 385 F.3d 503, 512, 2004 U.S. App. LEXIS 18929, *1 (5th Cir. Tex. Sept. 8, 2004)

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit explained that a prisoner's administrative grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.[2] The defendants need not be named in the grievance, and notice is given where the grievance provides functional descriptions or discrete references to times and places.[3] The Supreme Court has similarly addressed exhaustion requirements of the PLRA.[4]

In Johnson,[5] this Court wrote:

> In deciding how much detail is required in a given case, we believe that a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials "time and opportunity to address complaints internally."[6] Thus, a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit. Further, as a practical matter, the amount of information necessary will likely depend to some degree on the type of problem about which the inmate is complaining. If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know--and a prisoner could ordinarily be expected to provide--details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter. In contrast, a grievance in which an inmate says that his cell is

---

[2] Johnson, 385 F.3d at 522.

[3] Johnson, 385 F.3d at 523.

[4] Jones v. Bock, 549 U.S. 119, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, 580 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

[5] Johnson, 385 F.3d 516-517.

[6] Citing, Porter v. Nussle, 534 U.S. 516, 525, 152 L.Ed.2d 12, 122 S.Ct. 983 (2002).

habitually infested with vermin, or that the prices in the commissary are too high, could adequately alert administrators to the problem whether or not the grievance names anyone.

The Fifth Circuit compared Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001) (holding that a grievance specifically complaining of a beating at the hands of one guard did not suffice to exhaust a failure-to-protect claim against another guard, not mentioned in the grievance, who stood by and watched), with Brown v. Sikes, 212 F.3d 1205, 1207-10 (11th Cir. 2000) (holding that a prisoner who knew only that he had not received prescribed medical equipment had exhausted his claim, notwithstanding that his grievance did not name anyone).

This case is similar to Brown, because TRAMAINE POLK wrote in his ARP that

> On the above date [8.20.23 approx 11:39] I was housed in N4A#1 and was standing in my cell when Lt. Davis approached the cell and sprayed me with a chemical agent 2xs. Lt. Davis left off the Tier and returned and sprayed me a third time. Shorly after Lt. Davis sprayed me the a third time, he restrained me and escorted me in the lobby area where he sprayed me a fourth time in my right eye and mouth in which he refused to give me my shower. Once Cpt. Jones arrived I was removed from the lobby to Cell #1 . . . . Why didn't Lt. Davis turn his body camera on before using chemical agent, which is in violation of Policy . . . . [Ex 5]

This ARP was timely submitted and an investigation of sorts was had.

According to the 2nd step, there was an investigation into the actions of Lt. Davis. Lt. Davis is referenced in the 2nd step by name "Lt. Davis." Ex 6 According to the 2nd step, there was a statement taken by Lt. Davis and an investigation. Lt. Davis wrote reports and gave a statement. Ex 6. There is really no room for the DOC to argue it was not on notice of who was being served when Rhonda Weldon was served as the agent of Lt. Davis. Whether by accident or by design, this security breach produced damaging consequences for me that resulted in injury."[7]

> [A] grievance can sufficiently identify a person even if it does not provide an actual name; functional descriptions and the like--e.g., a reference to "the guards in the shower room" on a certain date--would suffice. Cf. id. at

[7] RD 69 at 3-4 of 16: ARP at 1 - 2.

> 1209-10 & n.4 (noting prison administrators' superior access to personnel information and records).[8] As we have already said, Johnson's grievances repeatedly refer to the UCC committees and their failure to believe his pleas and take measures to protect him. This was adequate to put the prison administrators on notice that members of the UCCs were connected, indeed most closely connected, with Johnson's problem. Johnson v. Johnson, 385 F.3d 503, 523, 2004 U.S. App. LEXIS 18929, *35 (5th Cir. Tex. Sept. 8, 2004)

The issue becomes, did TRAMAINE POLK provide enough information to place the DOC and Rhonda Weldon on notice to allow for an investigation? Yes. As such, there was sufficient information provided in the lawsuit and the citation to place DOC and Rhonda Weldon on notice of who was being served.

In this case, Rhonda Weldon is the agent for service on Lt. Robert Davis. Ex 3 As it turns out, all employees sign a consent for service through Ms. Weldon when they are hired. Rhonda Weldon was served with the citation for Lt. Davis. The AG's office agreed to make an appearance for Robert Davis on or before February 26, 2025. Ex 4. On February 26, 2025, the AG's office made an appearance on behalf of the State. The AG's office failed to make an appearance for Robert Davis as it represented it would do in its letter of January 27, 2025, perhaps, was a mere oversight.

In a recent case before another district court, the Plaintiff sought leave to amend to correct the date of the incident in the complaint. There, Pipkin v. Cont. Freighters, Inc., No. 1:23-CV-1409-RP, 2024 WL 722601, at *1 (W.D. Tex. Feb. 6, 2024), that Court wrote:

> In his response, Pipkin requests leave to file an amended complaint that contains the correct date of the accident.
>
> "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." Lyn–Lea Travel Corp. v. Am. Airlines, 283 F.3d 282, 286 (5th Cir. 2002). But leave to amend "is by no means automatic." Davis v. United States, 961 F.2d 53, 57 (5th Cir. 1991). A district court may deny leave to amend if it has a "substantial reason" to do so. Lyn–Lea Travel Corp., 283 F.3d at 286. The futility of amendment is one such substantial reason to deny leave to amend. Stripling v. Jordan Prod. Co., LLC, 234 F.3d

[8] Referencing, Brown v. Sikes, 212 F.3d 1205, 1209-10 (11th Cir. 2000).

> 863, 872–73 (5th Cir. 2000). A proposed amendment is futile if it fails to state a claim upon which relief could be granted. Id. at 873. Therefore, in determining futility, this Court will apply the "the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id.
>
> CFI does not argue futility, but instead suggests that Pipkin's amended complaint fails to show via competent evidence that the accident occurred in 2022. This misstates the standard—the viability of Pipkin's amendment is judged based on a Rule 12(b)(6) standard. Pipkin's amended complaint states that the accident occurred on April 2, 2022. This factual assertion is sufficient to survive a motion to dismiss at the pleading stage, even if unsupported by other evidence. Accordingly, amendment would not be futile, and the Court will grant the motion for leave.

Of the standard, a court in this district, Approved Mortg. LLC v. Winterwood Mortg. Grp., No. 6:23-CV-00934, 2023 WL 11938292, at *1 (W.D. La. Dec. 7, 2023), recently wrote:

> A party may amend his complaint 1) within twenty-one days of serving it; 2) within twenty-one days after service of a responsive pleading or Rule 12 Motion; or 3) otherwise with written consent of the opposing party or leave of court. F.R.C.P. Rule 15(a). "The court should freely give leave when justice so requires." F.R.C.P. Rule 15(a)(2). "This standard favors leave as a necessary companion to notice pleading and discovery." Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363, 367 (5th Cir. 2001). "Absent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, ... district courts must entertain a presumption in favor of granting parties leave to amend. Mayeaux v. Louisiana Health Serv. & Indem. Co., 376 F.3d 420, 425 (5th Cir. 2004). The court must determine whether the proposed amendment (1) was merely proposing alternative legal theories for recovery on the same underlying facts, in which case amendment should be permitted; or (2) would fundamentally alter the nature of the case, in which case the court may deny amendment if circumstances warrant. Mayeaux v. Louisiana Health Serv. & Indem. Co., 376 F.3d 420, 427 (5th Cir. 2004).
>
> The State's objections to allowing the amendment are frivolous.

## CONCLUSION

This Court should grant TRAMAIN POLK leave of court to file *Amended Complaint for Damages/Mace Loss of Eyesight*, allow the Plaintiff, TRAMAIN POLK, to amend the complaint herein and body of complaint from the name Lt. Davis to Lt. Robert Davis to reassert claims against that named defendant and to cure any confusion as to whether a federal claim was plead against the state.

Respectfully submitted:

s/ Donna U. Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX (225) 769-1997
dgrodner@grodnerlaw.com

CERTIFICATE

I hereby certify that on April 4, 2025, a copy of the foregoing was filed and served electronically with the Clerk of Court using the CM/ECF system.

/s Donna Grodner
Donna Grodner